**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| PALOMA MARQUEZ SANTES,<br>Petitioner,<br>vs.<br>CHAD SHEEHAN,[1] et al.,<br>Respondents. | No. 26-CV-4029-CJW-MAR<br><br>**ORDER** |

Petitioner Paloma Marquez Santes' petition for writ of habeas corpus is before the Court. (Doc. 1). Respondents filed a response. (Doc. 6). Petitioner filed a reply. (Doc. 10). For the following reasons, the Court **denies** the petition.

## *I. BACKGROUND*

Petitioner is a citizen of Mexico. (Doc. 1–2, at 1). She entered the United States without inspection at some point in 2022. (*Id.*; Doc. 1-4, at 3). Petitioner states that she "has lived in St. Paul, Minnesota continuously for four years." (Doc. 1, at 8).

On December 5, 2025, Immigration and Customs Enforcement ("ICE") arrested petitioner during Operation Metro Surge. (Doc. 9-1, at 3). On December 7, 2025, ICE also issued a warrant for petitioner's arrest. (Doc. 9-3). On December 26, 2025, ICE served petitioner with a Notice to Appear ("NTA"), charging her with being inadmissible for being present in the United States without being admitted or paroled and for failing to possess the required valid immigration documents. (Doc. 11-2); *see* 8 U.S.C. §

[1] As of filing, respondent Chad Sheehan has not filed an appearance or response. The Court finds his appearance or response not necessary here and thus proceeds in its analysis without them. *See* (Doc. 6, at 1 n.1) ("[A]ll arguments made on behalf of the [respondents] apply with equal force to these defendant, because [petitioner] is being detained at the request of the United States.").

1182(a)(6)(A)(i) ("An alien[2] present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible[.]"); 8 U.S.C. § 1182(a)(7)(A)(i)(I) ("[A]ny immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality . . . is inadmissible

Petitioner has twice requested bond redetermination hearings before an immigration judge. (Docs. 1-3 & 1-4). On February 4, 2026, and on February 25, 2026, an immigration judge denied the requests, finding that the judge did not have jurisdiction. (*Id.*). In the second order denying release on bond, the immigration judge wrote:

> If a court were to find respondent eligible for a bond, the Court would gladly grant her one. She is a non-criminal so she is not a danger to the community. Even though she has only been present in the United States since 2022, she has some sufficient family ties in the United States and the Court would give her a bond of $4,000.

(Doc. 1-4, at 3).

On March 17, 2026, petitioner filed the instant petition for habeas corpus relief with the Court, requesting respondents "immediately release her from detention," or, in the alternative, "order a bond hearing within five days." (Doc. 1, at 6). She also provided the Court with Exhibits, 1, 2, 3, and 4. (Docs. 1-2 through 1-5). Respondents answer that petitioner is subject to mandatory detention under Title 8, United States Code, Section 1225(b)(2)(A) and that "[p]etitioner's detention, mandated by statute, is

[2] The United States Code and the accompanying federal regulations use the term "alien." To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

constitutionally permissible." (Doc. 6, at 7). More specifically, respondents claim that "[p]etitioner's detention is consistent with both the plain language of 8 U.S.C. § 1225(b)(2) and due process." (*Id.*). Respondents also provided the Court with a declaration by John Ligon and Exhibits A, B, and C. (Docs. 9-1 through 9-5).[3] On April 14, 2026, petitioner filed a reply. (Doc. 10). Petitioner remains in ICE custody at the Woodbury County Jail. (Doc. 1-5).

## *II. LEGAL STANDARD*

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

---

[3] Exhibits 1 and A are both petitioner's NTA. (Docs. 1-2 & 9-2). Exhibits 2 and C are both the immigration judge's February 4, 2026 order. (Docs. 1-3 & 9-4). Exhibits 3 and D are both the immigration judge's February 25, 2026 order. (Docs. 1-4 & 9-5).

## *III. DISCUSSION*

Petitioner raises four arguments in support of her petition, claiming that her continued detention without the opportunity for a bond hearing violates (1) the U.S. Code, (2) the Due Process Clause, (3) the Administrative Procedure Act ("APA"), and (4) the Suspension Clause. The Court addresses the arguments in turn, beginning with the statutory argument.

### *A. Statutory Argument*

First, petitioner asserts that she "is not an arriving alien and does not fall within the scope of § 1225." (Doc. 1, at 4). Respondents content that petitioner is an applicant for admission under Section 1225(b)(2)(A). (Doc. 6, at 4).

While this case was pending, the Eighth Circuit issued its opinion in *Herrera Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). After conducting statutory interpretation of both Title 8, United States Code, Sections 1225(b)(2)(A) and 1226(a), the Eighth Circuit determined that Section 1226(a), which permits discretionary release on bond, does not govern the detention of aliens apprehended inside of the United States who have not been lawfully admitted. *Id.* at 1137. Rather, those aliens fall under the category contemplated by Section 1225(b)(2)(A), which requires mandatory detention for aliens not lawfully admitted. *Id.* at 1139–40. The Court is bound by Eighth Circuit precedent. *Harrington v. Wilber*, 670 F.Supp.2d 958, 967 (S.D. Iowa 2009) ("This Court is obligated to abide by the decisions of the Eighth Circuit Court of Appeals, because such decisions are controlling until overruled by the Eighth Circuit en banc, by the Supreme Court, or by Congress." (cleaned up)). Likewise, "[p]etitioner accepts that the purely statutory issue raised in the present matter is thereby resolved." (Doc. 10, at 3). Thus, petitioner's request for habeas corpus relief is **denied** on this ground.

### *B. Due Process Clause Argument*

Second, petitioner claims that her "ongoing and potentially indefinite detention without any individualized custody determination thus violates the Constitution." (Doc. 1, at 23). Respondents argue that "aliens are entitled to the rights provided by statute and the Due Process Clause provides nothing more." (*Id.*, at 4–5 (cleaned up)).

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). More specifically, the Supreme Court has found that the Due Process Clause extends to all persons present in the United States regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Thus, aliens have due process rights to life, liberty and property. U.S. Const., amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

In addition, once the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "A person's liberty is equally protected by the due process clause, even when the liberty itself is a creation of the State." *Id.* at 558. This applies to administrative agencies as well, and "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984).

A person released from custody "has at least an implicit promise" that his release "will be revoked only if he fails to live up to the parole conditions." *Morrissey. v. Brewer*, 408 U.S. 471, 482 (1972).

At the same time, the Due Process Clause "affords no protection against the deprivation of liberty interests that are not constitutionally cognizable." *Sanchez-Velasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010). And "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews*, 426 U.S. at 79–80. The Supreme Court has found that Section 1225(b)(2) mandates "detention of applicants for admission until certain proceedings have concluded" and that "neither §1225(b)(1) nor 1225(b)(2) says anything whatsoever about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). The Eighth Circuit has now concluded that petitioner falls definitively under Section 1225(b)(2)(A). Thus, although in a different situation when she filed her petition, petitioner now claims that she should receive more due process than she is entitled under the statute. But, "being detained pursuant to a constitutionally legitimate statute promulgated by Congress is not a due process violation." *Ibarra Sanchez v. Bondi*, No. 1:26-cv-00063, 2026 WL 883680, at *2 (D.N.D. Mar. 31, 2026).

Likewise, although petitioner now requests the ability to post bond, she was not ever released on bond as she entered the country without inspection. Thus, petitioner did not acquire a liberty interest in release on bond and the government has not arbitrarily revoked an interest that it created. *See Betancourth v. Tate*, No. 4:26-cv-01169, 2026 WL 638482, at *4–5 (S.D. Tex. Mar. 6, 2026) (finding that the re-detention of an alien who was released on her own recognizance with conditions without a bond hearing violated procedural due process because of that previous release); *Alvarez-Rico v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at *5–6 (S.D. Tex. Feb. 25, 2026) (finding the same in part because "a noncitizen who was previously released on a set of conditions

has a strong liberty interest in avoiding re-detention"). Rather, as petitioner has received all the process that she is due the Court finds no due process violation here either. *See Cervantes Merino v. Whitmore*, No. C26-43-LTS-MAR, 2026 WL 1034395, at *4 (N.D. Iowa Apr. 16, 2026) ("Regarding the class of aliens held under § 1225(b)(2) who have previously affected entry and have remained in the United States for a significant period of time, I find no constitutional right to a bond hearing during the pendency of removal proceedings."). Petitioner's request for habeas corpus relief is **denied** on this ground as well.

### *C. Administrative Procedure Act Argument*

Next, petitioner claims a violation of the APA, stating that "without meaningful process, continued detention exceeds statutory authority and violates the Constitution and the . . . APA[.]". (Doc. 1, at 5). Respondents do not address this argument, however, this claim fails for two reasons. First, a violation of the APA requires final agency action for judicial review. 5 U.S.C. § 704. Petitioner has not appealed and received a ruling from Board of Immigration Appeals ("BIA") on either denial of release on bond by the immigration judge; without a ruling from the BIA, this issue is not ripe. *See Garcia-Pascual v. Bondi*, 143 F.4th 910, 913 (8th Cir. 2025) (finding that the BIA affirming the immigration judge's decision was final agency action).

Second, although petitioner attempts to argue that the Department of Homeland Security ("DHS") has abruptly changed course in its classification of petitioner as an arriving alien, any change, as discussed above, now comes from binding Eighth Circuit precedent. What's more, petitioner is not claiming that DHS has handled aliens subject to mandatory detention under Section 1225(b)(2)(A) differently; rather, she argues that her classification as subject to mandatory detention is arbitrary and capricious, but, as already stated, the Eighth Circuit has determined otherwise. It's *Herrera Avila*, not prior

agency precedent that now controls, and the immigration courts, like this Court, are bound by Eighth Circuit precedent.

For those reasons, the Court also **denies** petitioner's request for habeas corpus relief as to this third ground.

### *D. Suspension Clause Argument*

Last, petitioner argues that she "lacks an administrative mechanism for custody review, thereby subjecting her to prolonged and potentially indefinite detention without statutory authority or procedural safeguards." (Doc. 1, at 27). She adds that "no adequate or effective substitute for habeas corpus exists through which [she] may obtain judicial review of the legality of her confinement," (*Id.*, at 33), and that after *Herrera Avila*, there is "no meaningful mechanism to test the legality of ongoing executive her detention as required by the Suspension Clause" left, (Doc. 10, at 12 (also citing *Banyee v. Garland*, 1115 F.4th 928 (8th Cir. 2024)). More specifically, petitioner argues that detention "is effectively insulated from judicial review, not because Congress suspended the writ, but because the available process no longer performs its constitutional function." (*Id.*, at 14). Respondents do not address this argument either.

The Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I § 9, cl. 2. The Supreme Court has found that when Congress enacted a statute which eliminated recourse to habeas corpus as a means to assert cognizable constitutional rights in the federal courts, that statute violated the Suspension Clause. *Boumediene v. Bush*, 553 U.S. 723, 795 (2008) (citing the language from the relevant statute preventing courts, justices, and judges from considering applications for a writ of habeas corpus). In reaching that conclusion, the Supreme Court found that because the statute "denies the federal courts jurisdiction to hear habeas corpus actions pending at the time of its enactment," the statute impermissibly suspended the

writ. *Id.* at 736; *see also Dep't of Homeland Sec'y v. Thuraissigiam*, 6591 U.S. 103, (2020) (reviewing the effect of the Illegal Immigration Reform and Immigrant Responsibility Act on the writ and finding that "[t]he writ simply provided a means of contesting the lawfulness of restraint and securing release" in the federal courts). In other words, for a Suspension Clause violation, the action must impede a petitioner's ability to seek habeas corpus relief in federal court.

Here, petitioner does not claim that her access to the writ of habeas corpus has been denied. She does not point to a statute that has prevented this Court from reviewing her petition, nor has she claimed any impediment to her ability to present her petition before this Court. Rather, petitioner is presenting her claims to this Court through the mechanism of habeas corpus, which the actions of ICE and the immigration judge have left untouched. She does not need a substitute for habeas corpus because she has been able to effectively present her petition for relief, thus, there has been no violation of the Suspension Clause despite this Court finding that she is not entitled to relief. The Court **denies** petitioner's request for habeas corpus relief as to this final ground.

## *IV. CONCLUSION*

For those reasons, petitioner's petition is **denied**. (Doc. 1). Judgment shall enter in favor of respondents. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED** this 30th day of April, 2026.



C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa